POMERANTZ LLP
Jennifer Pafiti
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Tel: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*- additional counsel on signature page -*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL KAMAU, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WINS FINANCE HOLDINGS INC., RENHUI MU, and JUNFENG ZHAO,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Samuel Kamau ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Wins Finance Holdings Inc. ("Wins" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Wins securities between October 31, 2018 and July 6, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Wins, through its subsidiaries, purports to provide financing solutions for small and medium enterprises in the People's Republic of China. The Company purports to offer financial guarantees, as well as financial leasing, advisory, consultancy, and agency services in Jinzhong City, Shanxi Province, and Beijing.

3.      In 2014, Wins entered into a RMB 580 million credit arrangement with Guohong Asset Management Co., Ltd. ("Guohong" and the "Guohong Loan"), pursuant to which Guohong's repayment was due to Wins in October 2019.

4.      In September 2017, Wins engaged Centurion ZD CPA & Co. ("CZD") as its independent registered public accounting firm after dismissing its previous accounting firm.

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the ultimate repayment of the RMB 580 million Guohong Loan was highly uncertain; (ii) nonpayment of the Guohong Loan would have a significant impact on the Company's financial and operating condition; (iii) weaknesses in Wins's internal control over its financial reporting persisted despite the Company's repeated assurances to investors that it was taking steps to remediate these weaknesses; (iv) the foregoing issues, among others, made the resignation of Wins's independent auditor foreseeably likely; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.      On October 31, 2019, Wins filed a notification of inability to timely file Form 20-F on Form NT 20-F with the SEC (the "2019 NT 20-F").

7.      The following trading day, the Company's stock price declined from $11.90 to $11.20, or 5.8%, on unusually high trading volume.

8.      On November 19, 2019, Wins issued a press release announcing its receipt of a notification letter from the NASDAQ Listing Qualifications and its intent to submit a plan of compliance.  The press release stated, in relevant part:

> The Company was unable to timely file its 2019 20-F due to the uncertainly over the recovery of RMB 580 million (approximately $83 million) in principal under an agreement the Company entered into in 2014 with Guohong Asset Management Co., Ltd., which was due to be repaid in October 2019. The Company has commenced discussions with Guohong Asset Management Co., Ltd. to recover the amount due, but there is no assurance that the Company will be able to recover any or all of the amount due. *However, the failure to collect this amount will not impact the Company's ongoing operations. The Company is currently working with its auditors on finalizing the Company's financial statements for its fiscal year ended June 30, 2019 in light of the uncertainty around this payment*.

(Emphasis added.)

9.     On May 26, 2020, Wins issued a press release announcing that the Company received a delisting determination letter from Nasdaq.  The press release stated, in relevant part, "[a]s disclosed previously, the Company is working assiduously to complete its delinquent filing with SEC and to regain compliance with the Nasdaq listing rule as soon as possible."

10.     In reaction to this news, Wins stock closed at $7.81 that day, in contrast to its previous close of $10.06, a decline of 22.3%, on unusually high trading volume.

11.     The Company's undisclosed ongoing financial difficulties—including nonrepayment of the Guohong Loan—and material control weaknesses came to a head on June 30, 2020, when CZD resigned as the Company's independent auditor after less than three years in that role.  On July 6, 2020, Wins issued a press release announcing CZD's resignation in which it stated, in relevant part:

> CZD expressed an adverse opinion on the Company's internal control over financial reporting as of June 30, 2017 and 2018 because of material weaknesses.
>
> During the Company's years ended June 30, 2017 and 2018 and through June 30, 2020, except with respect to the material weaknesses described below, there were no "reportable events" (defined below) requiring disclosure pursuant to Item 16F(a)(1)(iv) of Form 20-F. As used herein, the term "reportable event" means any of the items listed in paragraphs (a)(1)(v)(A)-(D) of Item 16F of Form 20-F. The following material weaknesses have been identified and included in management's assessment: lack of sufficient accounting personnel qualified in US GAAP, and SEC reporting; and insufficient accounting staff, which results in a failure to segregate duties sufficiently to ensure a timely and proper preparation and review of the financial statements.

12.     On this news, Wins's stock price fell $2.06 per share, or 6.1%, to close at $31.70 per share on July 7, 2020.

13.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

14.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

16.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).   Pursuant to Wins's Report for the Six Months Ended December 31, 2018, as of June 26, 2019, there were 19,837,642 Ordinary shares of the Company's stock outstanding.  The Company's Ordinary shares trade on the Nasdaq Global Select Market ("NASDAQ").   Accordingly, there are presumably hundreds, if not thousands, of investors in Wins's Ordinary shares located within the U.S., some of whom undoubtedly reside in California.

17.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

18.     Plaintiff, as set forth in the attached Certification, acquired Wins securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

19.     Defendant Wins, through its subsidiaries, purports to provide financing solutions for small and medium enterprises in the People's Republic of China.  Wins is a Cayman Islands company headquartered in Beijing, the People's Republic of China. Wins's securities trade on the NASDAQ under the ticker symbol "WINS."

20.     Defendant Renhui Mu ("Mu") has served as Wins's Chief Executive Officer at all relevant times.

21.     Defendant Junfeng Zhao ("Zhao") served as Wins's Chief Financial Officer from prior to the start of the class period until his resignation in June 2020.

22.     Defendants Mu and Zhao are sometimes referred to herein as the "Individual Defendants."

23.     The Individual Defendants possessed the power and authority to control the contents of Wins's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Wins's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Wins, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

24.     Wins and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Background

25.     Wins, through its subsidiaries, purports to provide financing solutions for small and medium enterprises in the People's Republic of China.  The Company purports to offer financial guarantees, as well as financial leasing, advisory, consultancy, and agency services in Jinzhong City, Shanxi Province, and Beijing.

26.     In 2014, Wins entered into a RMB 580 million credit arrangement with Guohong.   By the terms of the Guohong Loan, repayment to Wins was due in October 2019.

27.     In September 2017, Wins engaged CZD as its independent registered public accounting firm after dismissing its previous accounting firm.

**Materially False and Misleading Statements Issued During the Class Period**

28.     The Class Period begins on October 31, 2018, when Wins filed an Annual Report on Form 20-F with the SEC, reporting the Company's financial and operating results for the year ended June 30, 2018 (the "2018 20-F").   With respect to the Company's Audit Committee, the 2018 20-F stated, in relevant part:

> The audit committee of our board of directors is comprised of Xiaofeng Zhong, Shihai Wang and Weiqi Chen. Xiaofeng Zhong serves as the chairman of the audit committee. Each of the members of the audit committee is independent under the applicable Nasdaq listing standards. The purposes of the audit committee, as specified in our Audit Committee Charter, include, but are not limited to:
>
> - reviewing and discussing with management and the independent auditor the annual audited financial statements, and recommending to the board whether the audited financial statements should be included in our Form 20-F;
>
> - discussing with management and the independent auditor significant financial reporting issues and judgments made in connection with the preparation of our financial statements;
>
> - discussing with management major risk assessment and risk management policies;
>
> - monitoring the independence of the independent auditor;
>
> - verifying the rotation of the lead (or coordinating) audit partner having primary responsibility for the audit and the audit partner responsible for reviewing the audit as required by law;
>
> - reviewing and approving all related-party transactions;
>
> - inquiring and discussing with management our compliance with applicable laws and regulations;

- pre-approving all audit services and permitted non-audit services to be performed by our independent auditor, including the fees and terms of the services to be performed;

- appointing or replacing the independent auditor;

- determining the compensation and oversight of the work of the independent auditor (including resolution of disagreements between management and the independent auditor regarding financial reporting) for the purpose of preparing or issuing an audit report or related work;

- establishing procedures for the receipt, retention and treatment of complaints received by us regarding accounting, internal accounting controls or reports which raise material issues regarding our financial statements or accounting policies; and

- approving reimbursement of expenses incurred by our management team in identifying potential target businesses.

29.     In addition, with respect to Controls and Procedures, the 2018 20-F identified a material weakness in the Company's internal control over financial reporting, but stated, in relevant part:

We plan to take steps to remediate the material weaknesses in our internal control over financial reporting as soon as practicable by:

- hiring additional internal staff familiar with US GAAP and SEC reporting;

- hiring sufficient staff to adequately segregate responsibilities and insure timely preparation of financial statements; and

- providing training to our accounting personnel on US GAAP, SEC reporting and other regulatory requirements regarding the preparation of financial statements.

Although we increased the training provided to accounting personnel relating to US GAAP and SEC reporting to partially address the foregoing material weaknesses, we do not believe such weaknesses have been remediated and we can provide no assurance that they will be remediated in a timely manner.

***We believe that we are taking the steps necessary for remediation of the material weaknesses identified above, and we will continue to monitor the effectiveness of these steps and to make any changes that our management deems appropriate***.

Our management does not believe that these material weaknesses had a material effect on our financial condition or results of operations or caused our financial statements as of and for the year ended June 30, 2018 to contain a material misstatement.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Our independent registered public accounting firm, Centurion ZD CPA Limited, has audited the effectiveness of our Company's internal control over financial reporting as of June 30, 2018.

(Emphasis added.)

30.    Finally, with respect to Corporate Governance, the 2018 20-F stated, in relevant part, "[e]xcept as stated above, we currently intend to comply with the rules generally applicable to U.S. domestic companies listed on Nasdaq."

31.    The Company issued a corresponding press release announcing its filing of the 2018 20-F.  With respect to Current Outlook, the press release stated, in relevant part:

. . . we are pleased with the growth in our financial advisory and lease agency business. We believe that our customized financial consultancy services are of high value-added for our clients and that it can help them to procure financing. This business can also provide good leads for our guarantee services business should clients pass our risk assessment criteria.

In addition, we continue to believe that the financial leasing business offers substantial growth opportunities as SMEs have become an indispensable driver of promoting economic and employment growth and continue to contribute to China's economic transformation. Many SMEs need to upgrade their equipment and adopt new technologies but are not able to access traditional bank financing. We continue to believe that our focus on SMEs results from strategic evaluation as many such entities are nimble actors in China's economy with strong growth potential.

32.    On May 31, 2019, Wins filed correspondence with the SEC in which the Company responded to questions posed by the SEC regarding the 2018 20-F.  The correspondence stated, in relevant part:

Item 15. Controls and Procedures, page 71

5.  We note that your internal control over financial reporting was not effective as of June 30, 2017 or June 30, 2018 due to the same material weakness. We further note your disclosure at both dates that "we are taking the steps necessary for remediation." Please tell us and revise future filings to discuss the specific steps you have taken to remediate this material weakness. Specifically discuss the status of hiring additional staff familiar with US GAAP and SEC reporting and detail the qualifications of any staff hired.

Response: In response to the Staff's comment, the Company respectively advises the Staff that in its future filings the Company will include the following disclosures:

**We plan to take steps to remediate the material weaknesses in our internal control over financial reporting as soon as practicable** by:

(1) hiring additional accounting personnel familiar with US GAAP and SEC reporting . In the past couple of years, the company has made offers to hire accounting personnel familiar with US GAAP and SEC reporting experience, but has as of yet been unable to hire a suitable candidate. The Company now plans to hire a professional recruitment agency to assist us in the identification and selection of appropriate candidates.

(2) providing training to our accounting personnel on US GAAP, SEC reporting and other regulatory requirements regarding the preparation of financial statements. In July 2018 and July 2017, our financial personnel attended US GAAP and SEC reporting training sessions organized by an international accounting firm. We plan to hold similar US GAAP and SEC reporting training on a regular basis.

(Emphasis added.)

33.     The statements referenced in ¶¶ 28-32 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the ultimate repayment of the RMB 580 million Guohong Loan was highly uncertain; (ii) nonpayment of the Guohong Loan would have a significant impact on the Company's financial and operating condition; (iii) weaknesses in Wins's internal control over its financial reporting persisted despite the Company's repeated assurances to investors that it was taking steps to remediate these weaknesses; (iv) the foregoing issues, among others, made the resignation of Wins's independent auditor foreseeably likely; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

**THE TRUTH BEGINS TO EMERGE**

34.     On October 31, 2019, Wins filed a notification of inability to timely file Form 20-F on Form NT 20-F with the SEC (the "2019 NT 20-F").

35.     The following trading day, the Company's stock price declined from $11.90 to $11.20, or 5.8%, on unusually high trading volume.

36.     On November 19, 2019, Wins issued a press release announcing its receipt of a notification letter from the NASDAQ Listing Qualifications and its intent to submit a plan of compliance.  The press release stated, in relevant part:

> The Company was unable to timely file its 2019 20-F due to the uncertainly over the recovery of RMB 580 million (approximately $83 million) in principal under an agreement the Company entered into in 2014 with Guohong Asset Management Co., Ltd., which was due to be repaid in October 2019. The Company has commenced discussions with Guohong Asset Management Co., Ltd. to recover the amount due, but there is no assurance that the Company will be able to recover any or all of the amount due. ***However, the failure to collect this amount will not impact the Company's ongoing operations. The Company is currently working with its auditors on finalizing the Company's financial statements for its fiscal year ended June 30, 2019 in light of the uncertainty around this payment***.

(Emphasis added.)

37.     On May 26, 2020, Wins issued a press release announcing that the Company received a delisting determination letter from Nasdaq.  The press release stated, in relevant part, "[a]s disclosed previously, the Company is working assiduously to complete its delinquent filing with SEC and to regain compliance with the Nasdaq listing rule as soon as possible."

38.     In reaction to this news, Wins's stock closed at $7.81 that day, in contrast to its previous close of $10.06, a decline of 22.3%, on unusually high trading volume.

39.     On June 15, 2020, Wins issued a press release announcing that the Company's request for extended stay of suspension was granted by Nasdaq.  The press release stated, in relevant part, "[a]s disclosed previously, the Company is working assiduously to complete its delayed SEC filings of its financial statements and to regain compliance with the NASDAQ rules as soon as possible."

40.     After concealing for nearly two years the diminishing likelihood of timely repayment of the Guohong Loan and repeatedly assuring that it was proactively addressing the previously identified material weaknesses in its internal control over financial reporting, the Company's undisclosed ongoing financial difficulties came to a head with

the resignation of CZD as the Company's auditor on June 30, 2020.  On July 6, 2020, Wins issued a press release announcing CZD's resignation, which stated, in relevant part:

> CZD expressed an adverse opinion on the Company's internal control over financial reporting as of June 30, 2017 and 2018 because of material weaknesses.
>
> During the Company's years ended June 30, 2017 and 2018 and through June 30, 2020, except with respect to the material weaknesses described below, there were no "reportable events" (defined below) requiring disclosure pursuant to Item 16F(a)(1)(iv) of Form 20-F. As used herein, the term "reportable event" means any of the items listed in paragraphs (a)(1)(v)(A)-(D) of Item 16F of Form 20-F. The following material weaknesses have been identified and included in management's assessment: lack of sufficient accounting personnel qualified in US GAAP, and SEC reporting; and insufficient accounting staff, which results in a failure to segregate duties sufficiently to ensure a timely and proper preparation and review of the financial statements.

41.     On this news, Wins's stock price fell $2.06 per share, or 6.1%, to close at $31.70 per share on July 7, 2020.

42.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Wins securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Wins securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time

and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Wins or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

45.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

47.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Wins;

- whether the Individual Defendants caused Wins to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Wins securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

48.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

49.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Wins securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Wins securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

50.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

51.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in Affiliated Ute Citizens of the State of Utah v. United States, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

52.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

54.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Wins securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Wins securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

55.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Wins securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Wins's finances and business prospects.

56.     By virtue of their positions at Wins, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

57.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Wins, the Individual Defendants had knowledge of the details of Wins's internal affairs.

58.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Wins.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Wins's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Wins securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Wins's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Wins securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

59.     During the Class Period, Wins securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Wins securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Wins securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Wins securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

60.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

62.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

63.     During the Class Period, the Individual Defendants participated in the operation and management of Wins, and conducted and participated, directly and

indirectly, in the conduct of Wins's business affairs.  Because of their senior positions, they knew the adverse non-public information about Wins's misstatement of income and expenses and false financial statements.

64.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Wins's financial condition and results of operations, and to correct promptly any public statements issued by Wins which had become materially false or misleading.

65.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Wins disseminated in the marketplace during the Class Period concerning Wins's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Wins to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Wins within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Wins securities.

66.    Each of the Individual Defendants, therefore, acted as a controlling person of Wins.  By reason of their senior management positions and/or being directors of Wins, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Wins to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Wins and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

67.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Wins.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

1      A.      Determining that the instant action may be maintained as a class action

2  under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class

3  representative;

4      B.      Requiring Defendants to pay damages sustained by Plaintiff and the

5  Class by reason of the acts and transactions alleged herein;

6      C.      Awarding Plaintiff and the other members of the Class prejudgment and

7  post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other

8  costs; and

9      D.      Awarding such other and further relief as this Court may deem just and

10  proper.

## DEMAND FOR TRIAL BY JURY

11

12      Plaintiff hereby demands a trial by jury.

13

14  Dated:  July 24, 2020                    Respectfully submitted,

15                                          POMERANTZ LLP

16

17                                          */s/ Jennifer Pafiti*
                                            Jennifer Pafiti
18                                          1100 Glendon Avenue, 15th Floor
                                            Los Angeles, CA 90024
19                                          Tel: +1 310 405 7190
                                            Email: jpafiti@pomlaw.com

20                                          POMERANTZ LLP
21                                          Jeremy A. Lieberman
                                            (pro hac vice application forthcoming)
22                                          J. Alexander Hood II
                                            (pro hac vice application forthcoming)
23                                          600 Third Avenue, 20th Floor
                                            New York, New York 10016
24                                          Telephone: (212) 661-1100
                                            Facsimile: (212) 661-8665
25                                          jalieberman@pomlaw.com
                                            ahood@pomlaw.com
26
                                            POMERANTZ LLP
27                                          Patrick V. Dahlstrom
                                            (pro hac vice application forthcoming)
28

10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

Attorneys for Plaintiff